# In the United States Court of Federal Claims

No. 24-63
(Filed Under Seal: February 22, 2024)
(Reissued for Publication: March 12, 2024)[1]

```
*****************************************
SAMSARA INC.,                          *
                                       *
              Plaintiff,               *
                                       *
       v.                              *
                                       *
THE UNITED STATES,                     *
                                       *
              Defendant,               *
                                       *
and                                    *
                                       *
GEOTAB USA, INC.,                      *
                                       *
              Defendant-Intervenor.    *
*****************************************
```

*Nathaniel E. Castellano*, Jenner & Block LLP, Washington, DC, counsel for Plaintiff. With whom were *David R. Robbins*, *Aime J. Joo*, and *Sierra A. Paskins*, of counsel.

*Kara M. Westercamp*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. *Wendy Harris*, Commercial and Appellate Litigation Law Department, U.S. Postal Service.

*Robert S. Nichols*, Nichols Liu, LLP, Washington, DC, counsel for Defendant-Intervenor. With whom were *Michael Bhargava* and *Sam Van Kopp*, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Samsara Inc. ("Samsara") protests a decision by the United States Postal Service ("USPS") reaffirming a contract award to Geotab USA, Inc. ("Geotab") for the procurement of telematics devices for installation into the USPS's vehicle fleet. Samsara contends that the USPS

---

[1] This Opinion and Order was filed under seal on February 22, 2024, *see* [ECF 40], in accordance with the protective order entered in this case, *see* Protective Order [ECF 10]. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The parties filed a joint status report on March 8, 2024, stating that they do not have any proposed redactions. [ECF 48].

unlawfully reaffirmed the contract and restarted contract performance based on impermissible *post hoc* rationalization. Samsara seeks to stop contract performance while it exhausts the USPS's agency-level protest procedures and obtains resolution of its protest. The government seeks dismissal of Samsara's complaint for lack of subject matter jurisdiction. Geotab seeks dismissal of Samsara's complaint for failure to a state a claim. For the reasons stated below, the Court finds that exhaustion of the USPS's agency-level protest procedures is not required, Samsara's claims are ripe, and Samsara is not entitled to injunctive relief. Accordingly, Samsara's motion for preliminary and permanent injunctive relief is **DENIED**, and the government's and Geotab's respective motions to dismiss are **DENIED**.

## I.    BACKGROUND

The USPS issued the solicitation on August 1, 2022. First Am. Compl. [ECF 26] ¶ 15. The USPS sought to procure telematics devices to monitor the health and locations of its vehicles, as well as a monthly service plan for the devices. *Id*. ¶¶ 14, 17. The USPS awarded an Indefinite Delivery/Indefinite Quantity ("IDIQ") contract to Geotab on November 17, 2022. *Id*. ¶ 24. While the solicitation permitted the award of one or more IDIQ contracts, the USPS awarded only one contract. *Id*. ¶ 25.

The instant action is Samsara's second bid protest relating to this solicitation. [ECF 26] ¶ 29; *see Samsara Inc. v. United States,* No. 23-361, 2024 WL 228081 (Fed. Cl. Jan. 4, 2024).[2] Samsara's first protest challenged the USPS's initial award of the telematics device contract to Geotab. *Samsara,* 2024 WL 228081, at *3. In that case, following a post-award debriefing, Samsara submitted an agency-level protest with the Contracting Officer ("CO") in accordance with the USPS agency-level protest procedures. [ECF 26] ¶ 26. The CO denied Samsara's protest, and Samsara appealed the CO's denial to the Supplier Disagreement Resolution Officer ("SDRO"). *Id.* The SDRO denied Samsara's protest on March 8, 2023. *Id.* ¶ 27. Samsara filed a protest in this Court on March 13, 2022, alleging that the USPS's proposal evaluation and award decision was arbitrary and capricious. *Id.* ¶ 29. The USPS did not agree to stay Geotab's contract performance, so Samsara sought a preliminary injunction. *Id.* ¶¶ 30-31. The Court denied Samsara's request on May 26, 2023. *Samsara Inc. v. United States*, 166 Fed. Cl. 457, 463 (2023).

Next, Samsara filed a motion for judgment on the administrative record, which the Court granted on January 4, 2024. [ECF 26] ¶¶ 32, 34; *Samsara*, 2024 WL 228081, at *3. The Court found that the USPS erred in its evaluation of Samsara's proposal by applying an unstated evaluation criterion, which resulted in a flawed best value determination. *Samsara*, 2024 WL 228081, at *4. The Court enjoined the USPS from proceeding with performance of the Geotab contract and ordered the USPS "to reevaluate Samsara's proposal in a manner that redresses the errors identified in [the] Opinion, to conduct a new best value trade-off determination, and, as necessary, to make a new award decision." *Id.* at *16.

---

[2] The facts of the initial protest may be found in the Court's opinion and order granting Samsara's motion for judgment on the administrative record. *See Samsara*, 2024 WL 228081, at *1-3.

The USPS immediately ceased performance of the Geotab contract and discontinued installation of the Geotab telematics devices. Glass Decl. [ECF 30] at 52-53.[3] The USPS did not terminate the Geotab contract. [ECF 26] ¶ 47. The USPS reconstituted and reconvened the Technical Evaluation Team ("TET") to reevaluate Samsara's proposal. [ECF 30] at 53. The government informed Samsara "that the USPS planned to complete reevaluation and make a new award decision." [ECF 26] ¶ 37. Samsara advised the government that the USPS's Supplying Principles and Practices ("SP&Ps") "require the USPS to amend the Solicitation to reflect its changed requirements and to afford the offerors an opportunity to submit revised proposals." *Id.* ¶ 38. Prior to the USPS completing its reevaluation and new best value determination, Samsara submitted an agency-level protest with the CO on January 12, 2024, explaining that "the USPS was obligated to amend the Solicitation to reflect its changed requirements and provide offerors an opportunity to submit revised proposals." *Id.* ¶ 40.

Awaiting the outcome of its agency-level protest, Samsara filed the instant bid protest on January 17, 2024, alleging that "[t]he USPS's apparent decision and course of action is arbitrary and violates USPS's own rules, as memorialized in USPS [SP&Ps]" and that "[t]he USPS must amend the Solicitation to reflect its current requirements and invite offerors to submit revised proposals." Compl. [ECF 1] ¶ 4. On January 19, 2024, Samsara filed a motion seeking preliminary injunctive relief "to preserve the *status quo* by prohibiting [the USPS] from proceeding with performance of any contract award under [the solicitation] while Samsara is exhausting its administrative remedies relating to this procurement before the USPS." Mot. for TRO and Prelim. Inj. Relief [ECF 8] at 1. On that same day, the government provided Samsara with a document titled "Final Results of Award Reevaluation Pursuant to Court Order dated January 4, 2024." [ECF 26] ¶ 43; [ECF 27-6] at 2-12. The document, dated January 18, 2024, stated that "[b]ased on the results of the technical evaluation team's limited reevaluation effort and the contracting officer's own revised best value trade-off determination, the contracting officer determines that no new award is necessary" and that "award of a single IDIQ contract to Geotab USA, Inc. is reaffirmed." *Id.* at 11. The government also informed Samsara that Geotab had restarted contract performance on January 19, 2024. [ECF 26] ¶ 44.

The Court held an initial status conference in the instant bid protest on January 19, 2024. During the conference, the Court instructed the government to provide the parties with the number of USPS's anticipated telematic device installations over the next several months, to assist the parties in assessing the need for injunctive relief. On January 22, 2024, the government filed a notice stating that "[a]s of January 22, 2024, 117,198 devices have been installed, of which approximately 112,000 have been activated . . . [and] the Postal Service intends to install no more than 5,800 additional devices through February 29, 2024, which is an approximate five percent increase from the currently installed devices." Def.'s Notice [ECF 16] at 1.

On January 22, 2024, Samsara received the CO's denial of its January 12, 2024, agency-level protest. [ECF 26] ¶ 52. Samsara filed an appeal with the SDRO on January 29, 2024. *Id*. ¶ 53. On the same day, Samsara also submitted a separate agency-level protest with the CO challenging the USPS's "[a]ward [a]ffirmation." *Id.* ¶ 54. Samsara's agency-level protests are pending. Oral Arg. at 5:35-5:40, *Samsara, Inc. v. United States*, No. 24-63 (Fed. Cl. Feb. 16, 2024) [hereinafter Oral Argument].

---

[3] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

Samsara filed its amended complaint, along with a second motion seeking injunctive relief, on January 30, 2024. [ECF 26]; Pl.'s Mot. for Prelim. and Permanent Inj. Relief [ECF 27]. In its amended complaint, Samsara alleges that the USPS's decision to "authoriz[e] Geotab to continue performance under the same November 2022 contract that this Court determined to be irrationally and unlawfully awarded" violates the Court's order and is contrary to law. [ECF 26] ¶¶ 89-94 ("Count I"). Samsara also alleges that the USPS's decision to reevaluate proposals and make a new best value determination without amending the solicitation to reflect changed requirements and inviting revised proposals is arbitrary and capricious. *Id.* ¶¶ 111-118 ("Count II"). Samsara requests that the Court vacate the USPS award affirmation letter, vacate the USPS's contract award to Geotab, and enjoin the USPS from further performance of the Geotab contract. *Id.* ¶ 109. In its motion for injunctive relief, Samsara requests that the Court "prevent[] the USPS from any further performance of the contract that the USPS improperly awarded to Geotab in November 2022." [ECF 27] at 30.

The government opposes Samsara's motion for injunctive relief and moves to dismiss Samsara's complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that the Court lacks subject matter jurisdiction over the complaint because Samsara failed to exhaust the agency-level protest procedures. Def.'s Resp. and Mot. to Dismiss [ECF 30]. Geotab also opposes Samsara's motion for injunctive relief. Def. Intervenor's Resp. [ECF 32]. Further, although Geotab also moves to dismiss Samsara's complaint because Samsara failed to exhaust the agency-level protest procedures, it argues that Samsara failed to state a claim under RCFC 12(b)(6). [ECF 31]. The parties' motions are fully briefed, and the Court held oral argument on February 16, 2024.

## II.    LEGAL STANDARDS

The Tucker Act grants this Court authority in bid protests to award any relief it considers proper, including injunctive relief. *See* 28 U.S.C. § 1491(b)(2). However, injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). When determining whether to grant a preliminary injunction, the Court considers: (1) whether the movant has a reasonable likelihood of success on the merits, (2) whether the movant will suffer irreparable harm if an injunction is not granted, (3) whether the balance of hardships tips in the movant's favor, and (4) whether the public interest is best served by an injunction. *See id.* at 20*; see also Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). While no one factor is dispositive, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned to the other factors, to justify the denial." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). The burden of demonstrating entitlement to an injunction is on the movant. *Id.* Additionally, "a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

Under RCFC 12(b)(1), the court must grant the government's motion to dismiss if it finds that it lacks jurisdiction over the plaintiff's claim. *Awad v. United States*, 61 Fed. Cl. 281, 283 (2004); RCFC 12(h)(3). "When deciding a motion to dismiss for lack of subject matter

4

jurisdiction under [RCFC] 12(b)(1), the court must accept as true all undisputed facts asserted in the complaint and draw reasonable inferences in favor of the plaintiff." *Bitscopic, Inc. v. United States*, 166 Fed. Cl. 677, 696 (2023) (citing *Acevedo v. United States*, 824 F.3d 1365, 1368 (Fed. Cir. 2016)). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Groundbreaker Dev. Corp. v. United States*, 163 Fed. Cl. 619, 623 (2023) (citing *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011)). "Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Sandstone Assocs., Inc. v. United States*, 146 Fed. Cl. 109, 112 (2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). Thus, if the Court determines that it lacks subject matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

On a motion to dismiss under RCFC 12(b)(6), the Court must accept as true a complaint's well-pleaded factual allegations and construe them in the manner most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). All reasonable inferences must be drawn in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Dismissal "for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

## III.   DISCUSSION

As explained below, the Court finds that exhaustion of the USPS agency-level protest procedures is not required because the relevant statutes do not contain a clear statement mandating exhaustion and the institutional interests in requiring exhaustion are outweighed by Samsara's interest in prompt access to judicial review. The Court also finds that Samsara's claims are ripe for judicial review. Nevertheless, Samsara is not entitled to injunctive relief because it has not established that it will suffer irreparable harm, and the balance of harms weighs in favor of the government.

### A.   Exhaustion is Not Required

The USPS's regulations establish a two-step administrative process for resolving disagreements with actual or prospective suppliers. *See* 39 C.F.R. §§ 601.107-08. The regulations define "disagreements" as "[a]ll disputes, protests, claims, disagreements, or demands of whatsoever nature arising in connection with the acquisition of property and services." *Id.* § 601.107(a)(2). Under the regulations, suppliers must first lodge a disagreement with the responsible contracting officer, and the contracting officer must communicate a resolution within a ten-day resolution period. *Id.* § 601.107(b). If the disagreement is not resolved within the ten-day period or if the resolution is unsatisfactory, the supplier must lodge the disagreement with the SDRO. *Id.* § 601.108(a), (c). The regulations provide that "[i]t is

intended that this [SDRO] procedure generally will resolve disagreements . . . within approximately 30 days after receipt by the [SDRO]." *Id.* § 601.108(i). The regulations further provide that the supplier "lodging the disagreement may seek review of the [USPS's] final contract award only after the mandatory administrative remedies provided under § 601.107 and § 601.108 have been exhausted." *Id.* § 601.108(h).

The government asserts that Samsara's complaint is not within this Court's jurisdiction because "the [USPS] regulations make clear that [the] two-step administrative process *must* be fully exhausted before a protestor can seek judicial review." [ECF 30] at 26 (emphasis in original). Geotab contends that "[e]ven if this Court has subject-matter jurisdiction over Samsara's claim does not mean that it has properly stated a claim" because "even if jurisdiction exists, courts must dismiss cases if the plaintiff failed to exhaust administrative remedies." [ECF 31] at 6 (citations omitted). Samsara counters that this Court has jurisdiction over its complaint because "Samsara is challenging USPS's affirmation and continued performance of a contract award that has been final since March 8, 2023." [ECF 27] at 15. Alternatively, Samsara argues that the exhaustion of the USPS's administrative remedies is not jurisdictional because the "USPS's administrative exhaustion requirements were created by USPS through regulation" and "Congress has not codified any USPS exhaustion requirement." *Id.*

"The doctrine of exhaustion of administrative remedies provides that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *White & Case LLP v. United States*, 67 Fed. Cl. 164, 169 (2005) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)). There are two types of exhaustion: statutory exhaustion and prudential exhaustion. *Id.* "In deciding whether to require the exhaustion of administrative remedies, the Court must first look to the text of the statute itself: '[w]here Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.'" *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)) (alteration in original). A procedural requirement is treated as jurisdictional only if Congress clearly states that it is. *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (internal quotation marks omitted) (citations omitted); *ECC Int'l Constructors, LLC v. Sec'y of the Army*, 79 F.4th 1364, 1371 (Fed. Cir. 2023).

Samsara is not required to complete the USPS agency-level protest procedures under statutory exhaustion principles because the relevant USPS statutes do not contain a clear statement that exhaustion is mandatory.[4] The USPS's authority to draft and execute regulations pertaining to its agency-level protest procedures issues from Title 39 of the United States Code. *See* Purchasing of Property and Services; Supplier Debarment; Suspension, and Ineligibility, 79 Fed. Reg. 65,342, 65,343 (Nov. 4, 2014) (to be codified at 39 C.F.R. pt. 601) ("The authority citation for 39 CFR part 601 continues to read as follows: Authority: 39 U.S.C. 401, 404, 410, 411, 2008, 5001-5605") (emphasis removed). These statutes do not provide any "express language" or other clear statement that exhaustion of the agency-level protest procedures are a jurisdictional prerequisite. *See* 39 U.S.C. §§ 401, 404, 410-11, 2008, 5001-5605. At best, section 401 grants the USPS the power "to enter into and perform contracts" and "to settle and

---

[4] The government does not identify any statute containing a clear statement that the USPS's agency-level protest procedures are required before seeking judicial review.

compromise claims by or against it." 39 U.S.C. § 401(3), (8). However, this does not constitute "unmistakable evidence, on par with express language" that Congress intended to attach jurisdictional consequences to the USPS's agency-level protest procedures. *Santos-Zacaria*, 598 U.S. at 419 (internal quotation marks omitted) (citations omitted) (stating that "Congress is free to attach jurisdictional consequences to a requirement that usually exists as a claim-processing rule. But to be confident Congress took that unexpected tack, we would need unmistakable evidence, on par with express language addressing the court's jurisdiction."). Accordingly, the USPS's regulatory exhaustion requirement is not jurisdictional. *See ECC Int'l Constructors*, 79 F.4th at 1373 ("[R]ules outside the statutory text are not jurisdictional.").

Further, Samsara is not required to complete the agency-level protest procedures under prudential exhaustion principles because the USPS's interest in requiring Samsara to exhaust its procedures are outweighed by Samsara's interest in retaining prompt access to immediate judicial review. "In a prudential exhaustion case, exhaustion of administrative remedies is often required where the 'twin purposes of protecting administrative agency authority and promoting judicial efficiency' are served." *White & Case*, 67 Fed. Cl. at 170 (quoting *McCarthy*, 503 U.S. at 145). However, "[i]n determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. In its agency-level protests with the USPS, Samsara challenges the USPS's decision to reaffirm the contract award to Geotab and to allow Geotab to proceed with contract performance. While the USPS considers Samsara's challenges, it has allowed Geotab to continue performing the allegedly unlawful contract. Because this continued performance is allegedly causing Samsara irreparable harm, Samsara was forced to seek injunctive relief to stop it. If the Court were to require Samsara to exhaust its remedies at the agency-level before seeking judicial review, Samsara would not have access to a judicial forum to pursue injunctive relief or any other means of addressing its alleged harm. For this reason, the Court declines to require that Samsara exhaust its remedies at the USPS. *See id.* at 147 (stating that "[e]ven where the administrative decisionmaking schedule is otherwise reasonable and definite, a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim").

## B.    Samsara's Claims are Ripe

The government argues that Samsara's amended complaint is not yet ripe because "the final agency action upon which this protest is based would not be finalized, that is, the outcome of the corrective action, until the SDRO resolves [the] disagreements." [ECF 30] at 27. Samsara contends that "[t]here should [] be no question that this matter is ripe for judicial review" because "[b]y USPS's own regulations, the contract award to Geotab (which USPS has not rescinded and is still performing) became final." [ECF 27] at 14.

Ripeness is a doctrine that "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also . . . protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) ("*TKS*") (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967)). In assessing ripeness, the Court considers "(1)

the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration." *TKS*, 529 F.3d at 1362 (internal quotation marks omitted). "In order for a case to be ripe both prongs must be satisfied." *White & Case*, 67 Fed. Cl. at 172. The plaintiff bears the burden to establish that its claim is ripe for adjudication. *Morris v. United States*, 58 Fed. Cl. 95, 97 (2003) (citations omitted).

First, Samsara's amended complaint is fit for judicial review. "When a party challenges government action, the first factor becomes a question of whether the challenged conduct constitutes a final agency action." *Sys. Application & Techs.*, 691 F.3d at 1384 (citing *TKS*, 529 F.3d at 1363). "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *TKS*, 529 F.3d at 1362 (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)).

The USPS's decision to reaffirm the contract award to Geotab constitutes final agency action.[5] In response to the Court's January 4, 2024, opinion and order, the USPS re-evaluated Samsara's proposal and conducted a new best value trade-off determination. As a result of this new determination, the CO determined that "no new award is necessary" and that the award of a single contract to Geotab "is reaffirmed." [ECF 27-6] at 11. The USPS then instructed Geotab to continue performance of the contract. [ECF 30] at 53. The CO's decision to reaffirm the Geotab contract after conducting a new best value determination was not a tentative decision by the USPS nor an informal statement of the USPS's intent. *See Madison Servs., Inc. v. United States*, 90 Fed. Cl. 673, 679 (2009). It consummated the USPS's decisionmaking process and had direct legal consequences, including reestablishing the USPS's contractual obligations to Geotab, allowing Geotab to proceed with contract performance, and eliminating Samsara from consideration. The fact that the SDRO may affect the decision as part of the agency-level protest procedures does not make the decision less final. In *Jacobs Tech., Inc. v. United States*, the Court of Federal Claims held that a decision to take corrective action "was final and had direct legal consequences" and "[t]he fact that the Army could change course in the future by, for example, amending or canceling the solicitation, [did] not render TRAX's claim unripe." 131 Fed. Cl. 430, 447 (2017). Here, the SDRO could either reverse course on the award affirmation decision or

---

[5] Under Count I of its complaint, Samsara argues that "the USPS's Award Affirmation Letter does not rescind its prior evaluation and contract award; it does not stand on its own as a new contract award decision." [ECF 33] at 24. Relying on the United States Supreme Court decision in *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020), Samsara argues that "[b]ecause the USPS did not take new action and instead affirmed the same November 2022 contract, the USPS cannot use the (undisputedly new) *post hoc* rationales in the Award Affirmation Letter to justify its continued performance of the November 2022 contract." *Id*. at 25. Samsara concludes that "[o]nce stripped of the impermissible *post hoc* rationalizations, the USPS is unlawfully and irrationally performing a contract that this Court already found to be irrationally and unlawfully awarded." *Id*. On these grounds, Samsara urges the Court to issue permanent injunctive relief by vacating the award affirmation and Geotab contract to restore "the *status quo ante* the unlawful Award Affirmation." *Id*. at 30; [ECF 26] ¶ 119. These arguments relate to the lawfulness of the USPS's decision to reaffirm the contract award to Geotab based on the corrective action taken in response to the Court's January 4, 2024, order, *Samsara*, 2024 WL 228081, and the Court will address them on the merits after the parties file their motions for judgment on the administrative record. For the purposes of the instant motions, the Court finds that the USPS's decision to reaffirm the contract award to Geotab constitutes final agency action.

direct the USPS undertake additional corrective action. Such a result could render Samsara's claims moot. *See Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 325-26 (2015) (dismissing as moot protestor's claim after corrective action had been taken). However, this does not mean that Samsara's claims are unripe. *See Jacobs Tech.*, 131 Fed. Cl. at 447.

Next, Samsara satisfies the hardship requirement. "Unlike the standard for obtaining injunctive relief, which requires a showing of irreparable harm, the standard for ripeness requires a lesser showing of hardship." *Sys. Application & Techs.*, 691 F.3d at 1385. "Withholding court consideration of an action causes hardship to the plaintiff where the complained-of conduct has an 'immediate and substantial impact' on the plaintiff." *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1295 (Fed. Cir. 2008) (quoting *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171 (1967)). The CO's decision to reaffirm the Geotab contract award had an immediate impact and "its effects [have been] felt in a concrete way" by Samsara. *Pernix Grp., Inc. v. United States*, 121 Fed. Cl. 592, 601 (2015). Samsara has been eliminated from consideration by the USPS, and the Geotab contract award has been reaffirmed. Further, because the USPS has not stayed the Geotab contract and has proceeded with performance, the USPS continues to install telematics devices. If Samsara's claims were considered unripe, the hardship that it will face is clear: Samsara will have to await resolution of its agency-level protests without any recourse while Geotab continues to perform the challenged contract. *See Tex. Bio- & Agro-Def. Consortium v. United States*, 87 Fed. Cl. 798, 806 (2009) (finding no hardship where the hardship would not stem from the dismissal on ripeness grounds). This is sufficient to satisfy the hardship standard for ripeness. *See W. Refin. Sw., Inc. v. FERC*, 636 F.3d 719, 722 (5th Cir. 2011) (citing *Abbot Lab'ys*, 387 U.S. at 156) (stating that company "would suffer hardship by not having access to a judicial forum to review the adverse agency action in question.").

## C.    Samsara is Not Entitled to Injunctive Relief

Samsara "seeks full preliminary injunctive relief extending for as long as it takes for this Court to issue a final decision with respect to Count I of [its] First Amended Complaint." [ECF 27] at 27. The government argues that "Samsara cannot demonstrate that, absent an injunction, it would be 'deprived of the only remedy available were it to succeed on the merits.'" [ECF 30] at 40 (quoting *IBM Corp. v. United States*, 118 Fed. Cl. 677, 683 (2014)). In other words, the government states that "should the Court set aside the award to Geotab, then the Postal Service would have to undertake additional corrective action and make a new award." [ECF 30] at 39.

To demonstrate a right to injunctive relief, Samsara must establish that: (1) it is likely to succeed on the merits of its claim; (2) it will suffer irreparable harm in the absence of injunctive relief; (3) the balance of hardships weighs in its favor; and (4) the injunctive relief will not be contrary to public interest. *FMC Corp.*, 3 F.3d at 427; *see also Land Shark Shredding, LLC v. United States*, 142 Fed. Cl. 301, 305-06 (2019). Importantly, the Federal Circuit has stated that "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors." *Amazon.com*, 239 F.3d at 1350 (emphasis in original).

Setting aside whether Samsara has established that it is likely to succeed on the merits of its claim, Samsara has not established that it will suffer irreparable harm in the absence of injunctive relief. Samsara contends that it faces irreparable harm because "[e]very single

installation is further irreparable harm to Samsara's ability to compete fairly for USPS's telematics requirements." [ECF 27] at 28. Samsara further argues that "[e]very day that USPS continues using Geotab's software and devices, USPS users and systems . . . become more integrated with and dependent on Geotab, making it increasingly unlikely that the USPS can provide for a fair and objective competition for its telematics requirements." *Id*. However, Samsara's rationale does not evince an irreparable injury. This court "has consistently found unpersuasive arguments [that] seek to base a showing of irreparable harm on the possibility that the successful offeror would gain advantages" during the pendency of a bid protest. *See IBM Corp.*, 118 Fed. Cl. at 684 (citing *Eskridge Rsch. Corp. v. United States*, 92 Fed. Cl. 88, 98 (2010)) (rejecting protestor's argument that it would be irreparably harmed "on the possibility that the successful offeror would gain advantages during a transition period."); *see also Harmonia Holdings Grp., LLC v. United States*, 156 Fed. Cl. 238, 247-48 (2023). Thus, Samsara's arguments do not establish irreparable injury. *IBM Corp.*, 118 Fed. Cl. at 684. Moreover, any advantage that Geotab gains during the pendency of this bid protest would disappear if Samsara succeeded on the merits of its claims. That is because the government has maintained—throughout the course of this litigation and the prior bid protest—that the USPS is willing and able to remove all of Geotab's telematics devices and ostensibly start from square one of the contract. *See* [ECF 30] at 39; Oral Argument at 15:49-15:55; *Samsara*, 166 Fed. Cl. at 480 ("[I]f Samsara succeeds in its protest and there is a new procurement that results in a new awardee, the USPS is prepared to remove any devices installed by Geotab during the pendency of this protest."). Accordingly, Samsara does not establish irreparable harm because any advantages Geotab gains by its continued performance would be mitigated by a new competition. *See Harmonia Holdings*, 156 Fed. Cl. at 248.

Furthermore, the balance of hardships weighs against Samsara. Enjoining the Geotab contract will directly impact "the Postal Service's ability to deliver mail and packages in a cost effective and efficient manner." [ECF 30] at 52. This includes a "decrease in [the USPS's] ability to provide security for [its] vehicles and carriers," "an increase in Postal vehicle maintenance issues arising on routes," "a decrease in [the USPS's] ability to meet [its] service standards," and an inability "to pursue current savings initiatives that rely on Telematics data." *Id.* at 54-55. Moreover, if the Court enjoins performance of the Geotab contract, including data collection, "[t]he only way for a device to stop transmitting data would be for those devices to be terminated [and once] that happens the devices cannot be reactivated, and they would need to be removed and replaced." *Id.* at 55. Because there are currently 112,000 installed and active devices, the cost to the government would be "at least $3.4 million." *Id.* at 56. These harms to the government clearly outweigh the harm to Samsara in the absence of injunctive relief. Accordingly, Samsara's motion for preliminary injunction is denied.

## IV.    CONCLUSION

For the forgoing reasons, Samsara's motion for preliminary and permanent injunctive relief, [ECF 27], is **DENIED**; the government's motion to dismiss pursuant to RCFC 12(b)(1), [ECF 30], is **DENIED**; and Geotab's motion to dismiss pursuant to RCFC 12(b)(6), [ECF 31], is **DENIED**.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on January 22, 2024. [ECF 10]. Accordingly, it is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE**, **on or before March 8, 2024**, a joint status report that identifies any information the parties contend should be redacted, explains the basis for each proposed redaction, and includes an attachment of the proposed redactions for this Opinion.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge