# In the United States Court of Federal Claims

No. 24-63
(Filed Under Seal: June 28, 2024)
(Reissued for Publication: July 19, 2024)[1]

```
*****************************************
SAMSARA INC.,                           *
                                        *
                Plaintiff,              *
                                        *
        v.                              *
                                        *
THE UNITED STATES,                      *
                                        *
                Defendant,              *
                                        *
and                                     *
                                        *
GEOTAB USA, INC.,                       *
                                        *
                Defendant-Intervenor.   *
*****************************************
```

*Nathaniel E. Castellano*, Jenner & Block LLP, Washington, DC, counsel for Plaintiff. With whom were *David R. Robbins*, *Aime J. Joo*, and *Sierra A. Paskins*, of counsel.

*Kara M. Westercamp*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. *Wendy Harris*, Commercial and Appellate Litigation Law Department, U.S. Postal Service.

*Robert Nichols*, Nichols Liu LLP, Washington, DC, counsel for Defendant-Intervenor. With whom were *Michael Bhargava* and *Sam Van Kopp*, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Samsara Inc. ("Samsara") protests a corrective action by the United States Postal Service ("USPS") that reaffirmed a contract award to Geotab USA, Inc. ("Geotab") for the procurement of telematics devices. Samsara argues that the USPS's reaffirmation of its contract award to Geotab improperly relied on *post hoc* rationale and that the corrective action lacked a rational

---

[1] This Opinion and Order was filed under seal on June 28, 2024, *see* [ECF 67], in accordance with the Protective Order entered on January 22, 2024, [ECF 11]. The parties were given an opportunity to identify protected information for redaction. The parties filed a notice on July 19, 2024, stating that they do not have any proposed redactions. [ECF 69].

basis. For the reasons set forth below, the Court finds that the USPS's corrective action constituted new agency action and did not rely on impermissible *post hoc* rationale. Further, the Court finds that the corrective action had a rational basis. Accordingly, Samsara's Motion for Judgment on the Administrative Record ("MJAR") is **DENIED**, and the government's and Geotab's respective cross-MJARs are **GRANTED**.

## I.     BACKGROUND

This bid protest pertains to a solicitation for the procurement of telematics devices—hardware that monitors the health and locations of vehicles. First Am. Compl. [ECF 26] ¶ 14; AR 55.[2] The instant action is Samsara's second bid protest for this solicitation. [ECF 26] ¶ 29; *Samsara Inc. v. United States* (*Samsara I*), 169 Fed. Cl. 311 (2024).[3] The USPS issued the solicitation on August 1, 2022. AR 55. It awarded an Indefinite Delivery/Indefinite Quantity ("IDIQ") contract to Geotab on November 17, 2022. AR 3453.

Following that award, Samsara filed its first bid protest, challenging the USPS's proposal evaluation and award decision. *Samsara I*, 169 Fed. Cl. at 316. In that case, after a post-award debriefing, Samsara submitted an agency-level protest with the Contracting Officer ("CO") in accordance with the USPS agency-level protest procedures. AR 3528. The CO denied Samsara's protest, and Samsara appealed the denial to the Supplier Disagreement Resolution Officer ("SDRO"). AR 3757. The SDRO also denied Samsara's protest. AR 4056. Samsara filed a protest in this Court on March 13, 2022, alleging that the USPS's proposal evaluation and award decision was arbitrary and capricious. *Samsara I*, 169 Fed. Cl. at 316. The USPS did not agree to stay Geotab's contract performance, and Samsara subsequently filed a motion for a preliminary injunction. *Id.* at 318. The Court denied Samsara's motion on May 26, 2023. *Samsara Inc. v. United States*, 166 Fed. Cl. 457, 463 (2023).

Samsara then filed a MJAR, which the Court granted on January 4, 2024 ("January 4th Order"). [ECF 26] ¶ 34; *Samsara I*, 169 Fed. Cl. at 316. The Court found that the USPS erred in its evaluation of Samsara's proposal by applying an unstated evaluation criterion against Samsara by requiring an On-Board Diagnostic 1 ("OBDI") cable by Day One of the contract's performance, resulting in a flawed best value determination. *Samsara I*, 169 Fed. Cl. at 316. The Court enjoined the USPS from proceeding with performance of the Geotab contract and ordered the USPS "to reevaluate Samsara's proposal in a manner that redresses the errors identified in [the] Opinion, to conduct a new best value trade-off determination, and, as necessary, to make a new award decision." *Id.* at 332.

The USPS immediately ceased performance of the Geotab contract and discontinued installation of the telematics devices. Glass Decl. [ECF 59] at 47.[4] The USPS did not terminate the Geotab contract. [ECF 26] ¶ 47. It reconstituted and reconvened the same seven members

---

[2] The Court cites to the administrative record filed by the government at [ECFs 54-1, 54-2, 54-3, 54-4, 54-5] as "AR ___."

[3] The facts of the initial protest may be found in the Court's opinion and order granting Samsara's MJAR. *See Samsara I*, 169 Fed. Cl. at 316-18.

[4] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

comprising the Technical Evaluation Team ("TET") to reevaluate Samsara's proposal. AR 4784-85. Based on the January 4th Order, the USPS stated that "[t]he area of focus (and the only aspect of the solicitation that is open for reevaluation) is Samsara's OBDI capability." AR 4714. The USPS narrowed its review of Samsara's proposal to the parts that dealt with OBDI, and "[n]o other aspects of Samsara's proposal, nor any of the other offeror proposals [were] evaluated." *Id.*

The TET conducted the reevaluation over a two-day period, and it "rereviewed the sections of the [Request for Proposal ('RFP')] and Samsara's proposal that addressed OBDI." AR 4785. Each of the seven evaluators submitted reviews addressing the strengths, weaknesses, and risks of Samsara's technical proposal. AR 4721-25 (Evaluator 1); AR 4726-29 (Evaluator 2); AR 4730-34 (Evaluator 3); AR 4735-43 (Evaluator 4); AR 4744-48 (Evaluator 5); AR 4749-52 (Evaluator 6); AR 4753-57 (Evaluator 7). These reviews highlighted the differences between the first technical evaluation and the second evaluation. AR 4721-57. Upon completion of the limited reevaluation of Samsara's technical proposal, the evaluators submitted an "updated consensus evaluation form and consensus score spreadsheet" to the CO. AR 4758. The Technical Evaluation Chairperson—a member of the TET—noted that "[a]fter review of the OBDI related content in Samsara's proposal[,] the scoring has not changed." *Id.*

The CO then issued a decision ("Award Affirmation Decision"), "confirm[ing] the Postal Service's original determination that a single award to Geotab provided the best value to the Postal Service." AR 4784. The CO stated that "the purpose of this reevaluation recommendation memorandum is to conduct the limited reevaluation ordered by the court of Samsara's technical proposal, make a revised best value trade-off determination, and, if necessary, issue a new award decision based on these findings." *Id.* The CO interpreted the January 4th Order as finding that "the Postal Service erroneously identified one specific weakness related to OBDI in Samsara's technical proposal" but that "[t]he court otherwise found that [the] Postal Service properly evaluated Geotab's and Samsara's technical proposal in accordance with the RFP." *Id.* In summarizing the technical reevaluation process, the CO stated the following:

> As any new award decision, if necessary, is premised upon the original RFP and proposals. No new proposals were required to reevaluate Samsara's existing proposal against other existing proposals, make a new best value trade-off decision, and make a new award decision as necessary. Therefore, at the direction of the undersigning Contracting Officer, [the] Technical Evaluation Chairperson . . . reconstituted the technical evaluation team to conduct consensus discussions for the purposes of updating the technical evaluation team's evaluation of Samsara's technical proposal to redress the error identified by the Court with respect to the OBDI requirements.

*Id.* The CO further stated that "[p]er the Court's Order, the sole and limited scope of this technical reevaluation effort was to consider Samsara's proposed approach to addressing the Postal Service's OBDI requirements without application of any unstated evaluation criteria, and accordingly[,] adjust Samsara's technical scoring if appropriate." AR 4785.

The CO then provided the consensus evaluation, underlining the revised comments of the TET's re-evaluation. AR 4787-90. He noted that the TET "consensus evaluations reflect[ed] the evaluators' collective understanding that an existing OBDI cable at time of award is not required, but that Samsara did not effectively demonstrate a proposed approach to have [an] OBDI cable capability within the 180-day period after award as required by the solicitation." AR 4790. He also noted that "while the technical evaluation team included significant amended comments in the narrative, particularly with regards to weaknesses and risks, Samsara's score remained unchanged from the original technical evaluation." *Id.* As to the price proposals, the CO determined that while "Samsara also alleged that the Postal Service failed to conduct equal price evaluations[,] [] the Court rejected each of those arguments" and [t]herefore, the Postal Service did not reevaluate price proposals of any offeror, and the evaluated price for the top 3 offerors remains per the original price evaluation." AR 4791. Applying the prior price evaluation, the CO concluded that "[a]lthough Samsara's price was the lowest overall evaluated price, it was only 0.85% lower than Geotab's evaluated price." *Id.*

The CO then made a revised best value determination, stating that because "the technical scoring remains the same as the original award recommendation and pricing is unchanged from the original award recommendation, the best value trade-off determination remains the same—Samsara does not offer the optimal balance of technical and price features for the Postal Service to render it an award as a result of this solicitation." *Id.* The CO determined "that all errors that have been identified by the Court as it relates to unstated evaluation criteria have been fully redressed, which cures any potential flaws in the best value trade-off determination and the award decision." *Id.* "Based on the results of the technical evaluation team's limited reevaluation effort and the [CO's] own revised best value trade-off determination," the CO concluded that no new award is necessary and reaffirmed award of a single IDIQ contract to Geotab. AR 4792.

Prior to the USPS completing its reevaluation of Samsara's proposal, Samsara filed an agency-level protest of the USPS's approach to the reevaluation. AR 4794. Samsara contended that "before re-evaluating proposals and making a new award decision pursuant to the court's order, the USPS[] is obligated to amend the Solicitation to reflect changes in USPS requirements that arose while the Court of Federal Claims protest was pending." *Id.* Samsara informed the USPS that its Supplying Principles and Practices ("SP&Ps") require the USPS "to amend the Solicitation to reflect changes in USPS requirements" and "to give all offerors an opportunity to submit revised proposals against those updated requirements." *Id.* Samsara stated that the amount of devices installed due to "Geotab's performance—which USPS authorized at risk of an adverse protest outcome—has necessarily changed the USPS's required delivery schedule." AR 4795.

After filing its agency-level protest, Samsara filed a bid protest on January 17, 2024, alleging that "[t]he USPS's apparent decision and course of action is arbitrary and violates USPS's own rules, as memorialized in USPS [SP&Ps]" and that "[t]he USPS must amend the Solicitation to reflect its current requirements and invite offerors to submit revised proposals." Compl. [ECF 1] ¶ 4; *Samsara Inc. v. United States*, 170 Fed. Cl. 229, 234 (2024). The following day, on January 18, 2024, the USPS completed its reevaluation of Samsara's technical proposal. AR 4784. Samsara filed a motion seeking preliminary injunctive relief the next day. Pl.'s Mot. for TRO and Prelim. Inj. Relief [ECF 8]. Samsara received the results of the USPS's

reevaluation that same day, and after the Court held an initial status conference, Samsara filed an amended complaint, [ECF 26], and a second motion seeking preliminary injunctive relief, Pl.'s Second Mot. for TRO and Prelim. Inj. Relief [ECF 27]. The Court denied Samsara's motion for injunctive relief on February 22, 2024. [ECF 40]; *Samsara*, 170 Fed. Cl. at 233.

During the pendency of Samsara's January 17, 2024, bid protest, the CO denied Samsara's agency-level protest on January 22, 2024, AR 4796, and Samsara appealed that decision to the SDRO and filed a second agency-level protest on January 29, 2024, AR 4801, 4804. In its second agency-level protest, Samsara argued that the "USPS did not take new action" because "USPS would have had to make a new award, rather than reaffirming its prior award." AR 4803. Samsara continued, stating that "[i]nstead of taking new action, the Award Affirmation reveals that USPS impermissibly invoked new, *post hoc* justifications to support its prior award to Geotab." *Id.* Relying on the Supreme Court decision in *Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020), Samsara argued that the USPS award affirmation was based on impermissible *post hoc* rationalization. AR 4807. Applying the holding of that case, Samsara argued that "[t]he USPS could either: (1) attempt to articulate a fuller explanation of its reasoning at the time of the initial evaluation and award decision, without introducing *post hoc* rationale, or (2) take entirely new agency action, including complying with all of the procedural requirements associated with that new agency action. The USPS failed to adhere to either of these two paths." *Id.*

The CO denied the second agency-level protest on February 8, 2024. AR 4814. The CO stated that the USPS fully complied with the January 4th Order, AR 4815, and that the USPS followed the procedural requirements for the reevaluation, AR 4816. Samsara appealed that decision to the SDRO on February 20, 2024, reiterating the same arguments it made in its second agency-level protest. AR 4819. The SDRO denied both of Samsara's appeals on March 21, 2024. AR 4825. In his decision, the SDRO rejected Samsara's argument that the USPS did not take new action, and instead, he found that after "review[ing] all of the relevant documentation, . . . [t]he Postal Service took corrective action to make a new decision in accordance with the second option in *Regents*." AR 4830.

Following the Court's denial of injunctive relief, Samsara filed an MJAR on April 12, 2024. [ECF 56]. The government and Geotab filed their respective Cross-MJARs on May 3, 2024. Def.'s Cross-MJAR [ECF 59]; Def. Intervenor's Cross-MJAR [ECF 58]. The parties' motions are fully briefed, and the Court held oral argument on June 6, 2024.

## II.   LEGAL STANDARDS

The Tucker Act grants this court jurisdiction "to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380 (Fed. Cir. 2012). The court's bid protest jurisdiction extends to review of a procuring agency's corrective action. *Jacobs Tech.*

*Inc. v. United States*, 131 Fed. Cl. 430, 444 (2017) (citing *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007)).

Under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record to assess whether a federal administrative body acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019) (citing *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013)). An RCFC 52.1 motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 Fed. Cl. 1345, 1352 (Fed. Cir. 2004) (citing *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 566 (2000)). A motion for judgment on the administrative record "provide[s] for trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). This court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum*, 404 F.3d at 1356).

This court reviews bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"), *see* 28 U.S.C. § 1491(b)(4), which permits the court to set aside an agency's contracting decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); *see Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001). The court may set aside an agency decision if "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). The "arbitrary or capricious standard [] is highly deferential" to the agency's decision and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). "For the rational basis standard, the agency must have 'provided a coherent and reasonable explanation of its exercise of discretion,' and the [protestor] bears the burden of showing that there was no rational basis for the decision." *Cahaba Safeguard Admins., LLC v. United States*, 165 Fed. Cl. 318, 327 (2023) (quoting *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018)). In addition to showing that the government's actions were arbitrary, capricious, or otherwise not in accordance with law, the protestor must "show that it 'was prejudiced as a result – that it had a substantial chance to receive the award but for that error.'" *Newimar S.A. v. United States*, 160 Fed. Cl. 97, 128 (2022) (quoting *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 386-87 (2003), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004)).

## III.   DISCUSSION

Samsara presents two arguments. First, Samsara argues that "[t]he USPS failed to take 'new agency action,'" and that the USPS's revised evaluation materials "must be disregarded as *post hoc* rationalizations." [ECF 56] at 6. Second, Samsara asserts that even if the USPS took

"new agency action," the USPS's action cannot survive APA review because it "has not articulated a rational basis for the corrective action" and the corrective action fails to account for the USPS's current requirements. *Id.* The government contends that the USPS's corrective action was reasonable because "[a]gencies possess the discretion to determine the scope of corrective action." [ECF 59] at 22. The government further argues that the USPS's corrective action was a new agency action under which the prohibition on *post hoc* rationalizations does not apply. *Id.* at 31. Geotab argues that Samsara raises issues that are "completely irrelevant to the Postal Service's corrective action," [ECF 58] at 7, and that Samsara's *post hoc* rationalization arguments are meritless, *id.* at 16. As explained below, the Court finds that the USPS's Award Affirmation Decision constituted a new agency action because it adhered to the applicable procedural requirements and superseded the November 2022 contract award decision. Further, the Court finds that the USPS articulated a rational basis for its corrective action.

### A. Samsara's Assertion that the USPS Proffered *Post Hoc* Rationalization Rather than Issue a New Agency Action in its Award Affirmation Decision

Samsara's argument that the USPS did not issue a new agency action is two-fold. First, Samsara contends that, for the USPS to issue a new agency action, it "would have, at a minimum, had to recognize the circumstances as they existed in January 2024." [ECF 56] at 19. By reevaluating the proposals and evaluation materials in 2024 as if the USPS were evaluating them in 2022, Samsara argues that "the USPS did not take 'new agency action' dealing 'afresh' with the November 2022 contract award." *Id.* Second, Samsara contends that because "the USPS's Award Affirmation Letter does not rescind its prior evaluation and contract award; it does not stand on its own as a new contract award decision." *Id.* at 20.

The government rejects Samsara's assertion that "the Postal Service could only have 'new action' if it had terminated Geotab's contract, re-evaluated the proposals, and issued a new contract award." [ECF 59] at 35. The government asserts that the argument that "only a new award decision passes the 'bar against *post hoc* rationalization,'" *id.* (quoting [ECF 56] at 21), is a technicality that cannot apply when "the Court ordered the Postal Service to conduct a new best value trade-off determination, and, *as necessary*, to make a new award decision," *id.* (internal quotation marks and citation omitted) (emphasis in original). The government further contends that "the Postal Service took corrective action to make a new decision, which is perfectly appropriate under the second option in *Regents*, and the *post hoc* rationalization rule does not apply." *Id.* at 31 (citing *Biden v. Texas*, 597 U.S. 785, 810-11 (2022)). Geotab argues that "*Regents* does not apply to this case in any way" because *Regents* "only applies to situations in which courts have held that an agency failed to properly explain its actions." [ECF 58] at 17. According to Geotab, the Court ordered a reevaluation, and thus, *Regents* does not apply "because there was no original finding that the agency's explanation was inadequate which the Supreme Court explicitly said was a prerequisite" for the two paths explained in *Regents*. *Id.* at 19.

Before addressing Samsara's arguments, the Court examines *Regents* to determine whether this case falls within the *Regents* framework. In *Regents*, the Supreme Court explained that "a court may remand for the agency to do one of two things: First, the agency can offer 'a fuller explanation of the agency's reasoning *at the time of the agency action*.' . . . Alternatively,

the agency can 'deal with the problem afresh' by taking *new* agency action." 591 U.S. at 20 (alterations in original) (citations omitted). When an agency offers a fuller explanation, "the agency may elaborate later on [its] reason (or reasons) but may not provide new ones." *Id.* at 20-21. When taking new agency action, the agency "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id. Regents* thus provides two paths for an agency upon remand: it may "either rest on its [initial] decision while elaborating on its prior reasoning[] or issue a new decision featuring additional reasons absent from its [initial] decision." *Fisher v. Pension Benefit Guar. Corp.*, 994 F.3d 664, 669-70 (D.C. Cir. 2021); *accord IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 77 (2022).

*Regents* is applicable to this case because it is binding Supreme Court precedent that governs situations where a court determines that an agency decision is inadequate and returns such decision to the agency for further action. In *Samsara I*, the Court found that the USPS's explanation for assessing a weakness against Samsara's proposed OBDI solution—that is, the failure to have an OBDI cable on Day One of the contract—was not supported by the solicitation's requirements. 169 Fed. Cl. at 321-22. This inadequate explanation resulted in the Court ordering the USPS to address this error. *Id.* at 332. Although the Court did not specifically order a remand in *Samsara I, see* 169 Fed. Cl. at 332, the Court enjoined "the USPS from proceeding with performance of the contract award to Geotab," *id.* In effect, however, the Court's injunction of the USPS's performance of the contract award with further instructions was a remand. *See IAP Worldwide*, 160 Fed. Cl. at 81 (stating as an example that "a remand with vacatur [is] an order setting aside a contract award *or otherwise prohibiting contract performance*.") (emphasis added); *see also* 28 U.S.C. § 1491(b)(2) ("In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official *with such direction as it may deem proper and just*.") (emphasis added). Thus, the USPS's corrective action in response to the January 4th Order places this case within a *Regents* analysis.[5] [6]

Having established that *Regents* applies to this case, the Court now addresses what *Regents* requires from the USPS when it conducts corrective action. *Regents* requires that for

---

[5] Even in circumstances where this court has *not* ordered remand, the court has applied the *Regents* framework to an agency's corrective action. *Compare Syneren Tech. Corp. v. United States*, 168 Fed. Cl. 756, 771 (2023) (finding that the agency issued a new agency action under the second *Regents* path), *with id.* at 777 (stating that "all *Allicent* held was that if [the agency] wanted to award contracts pursuant to the [procurement], it would have to re-evaluate certain technical proposals in a way that was not inconsistent with that decision. That is not a remand."); *see also Connected Global Sols., LLC v. United States*, 162 Fed. Cl. 720, 733-34 (2022) (applying *Regents* framework to a bid protest of an agency's corrective action following a Government Accountability Office recommendation).

[6] While *Regents* articulates two paths for an agency to follow upon remand, the role of the Court in directing the agency to follow one of those two paths is uncertain. *See IAP Worldwide*, 160 Fed. Cl. at 77 (discussing the extent to which courts may order an agency to take one path or whether agencies have broad discretion to choose one of the two paths). Regardless, the Court only ordered that the USPS reevaluate Samsara's proposal, conduct a new best value determination, and, as necessary, make a new award decision. *Samsara I*, 169 Fed. Cl. at 332. Although the January 4th Order may have limited the USPS to only new agency action, such an order would not make *Regents* inapplicable. *See IAP Worldwide*, 160 Fed. Cl. at 77 (stating that "'it appears that most cases ... interpret the Supreme Court's decision in *Regents* broadly' — *i.e.*, 'that agencies get to decide which route to take upon remand' — it also 'appear[s] that the Court [may] indicate which option (if any) it deems appropriate under the circumstances.'") (quoting *Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*, 2021 WL 4188052, at *4-5 & n.8)).

new agency action, an agency "must comply with the procedural requirements for new agency action." 591 U.S. at 21. Since *Regents*, the court has issued a handful of decisions identifying an agency's corrective action as new agency action. *See Syneren Tech. Corp. v. United States*, 168 Fed. Cl. 756, 770-71 (2023) (finding that agency's limited reevaluation of select proposals after terminating the contract was a new agency decision); *Cahaba*, 165 Fed. Cl. at 328 (finding that reconsideration memorandum was a new agency action when the agency terminated the contract and issued a memorandum stating that it "is a new decision and supersedes the [a]gency's original decision."); *Connected Global Sols., LLC v. United States*, 162 Fed. Cl. 720, 733-34 (2022) (finding that agency's corrective action in "revising the RFP, soliciting revised proposals, empaneling and training a new technical evaluation team, . . ., conducting an entirely new evaluation, performing new discussions with offerors, and making a new source selection decision" constituted new agency action). In each case, the court underwent a fact-intensive examination of the agency's actions. *See, e.g.*, *Syneren*, 168 Fed. Cl. at 769-71 (examining the history of the agency's corrective action after the court's decision in *Allicent* to determine that the agency's latest contract award decision was a new agency action). Thus, determining whether an agency action is new or unlawful *post hoc* rationalization is a fact-intensive exercise. The determination of whether the Award Affirmation Decision constitutes new agency action requires the Court to compare the USPS's actions against its procedural requirements. *Regents*, 591 U.S. at 21.

When the court orders corrective action, the court turns to the applicable regulations and solicitation requirements to determine whether the agency acted appropriately. *See Vanquish Worldwide, LLC v. United States*, 163 Fed. Cl. 57, 73-74 (2022) (assessing agency's implementation of corrective action against the requirements of the Federal Acquisition Regulation and the solicitation); *see also Dell Fed.*, 906 F.3d at 997 (stating that "[w]e do not disrupt on appeal the Army's adherence to the terms of the Solicitation in implementing its corrective action to open discussions.") (citing *Croman Corp. v. United States*, 724 F.3d 1357, 1363 (Fed. Cir. 2013)); *Guardian Moving & Storage Co., Inc. v. United States*, 657 Fed. App'x 1018, 1023 (Fed. Cir. 2016) (stating that "[A]gencies are 'allowed the discretion to review their own conclusions if they conclude a mistake has been made, or if further inquiry appears appropriate, *provided the re-evaluation conforms with the solicitation*, including any modifications to the solicitation and the evaluation process is conducted in a manner fair to all offerors.'") (emphasis added) (quoting *Glenn Def. Marine (Asia), PTE Ltd. v. United States*, 105 Fed. Cl. 541, 569 (2012)). Thus, the Court turns to the solicitation to determine whether the USPS followed the appropriate procedures in reevaluating Samsara's proposal.

The solicitation informed offerors that the USPS will award the contract in accordance with USPS Supply Management, SP&Ps[7] based on best value, that is "the best combination of Technical and Price Proposals." AR 136. The USPS will assess those proposals in "a tradeoff between technical merit and price to determine best value." *Id.* Per SP&P 2-31.2, a committee will evaluate proposals, and this committee "will determine the proposal most responsive and advantageous to USPS, taking into consideration technical evaluation factors and price." *Id.*; *2-31.2 Individual Evaluation*, USPS, https://about.usps.com/manuals/spp/html/spp2_235.htm (last

---

[7] Although the USPS SP&Ps do not constitute binding regulations, the Court may review whether the USPS's actions lacked a rational basis considering the SP&Ps. *See Am. K-9 Detection Servs., LLC v. United States*, 155 Fed. Cl. 248, 266 (2021) (citing *Impresa*, 238 F.3d at 1332).

modified April 1, 2023). Specific to the technical proposal, a team of evaluators will have its members evaluate and score proposals against the Technical Evaluation Criteria. AR 136. Upon reaching a consensus, the team "will rank technical proposals in relation to each other to judge their comparative value and achieve final consensus," *id.*, and then submit "a written report with narrative statements identifying the major strengths and weaknesses of the various proposals." *2-31.3 Comparative Evaluation*, USPS, https://about.usps.com/manuals/spp/html/spp2_236.htm (last modified April 1, 2023). "After proposal evaluation, comparative analysis, and ranking of the proposals . . . [t]he contracting officer must then make a recommendation" for award. *2-40.2 Best Value Determination and Award Recommendation*, USPS, https://about.usps.com/manuals/spp/html/spp2_302.htm (last modified April 1, 2023). Finally, after the CO makes a recommendation, when the contract is valued at $20 million or more, the Vice President of Supply Management "must [] review[] and approve[]" the award recommendation. *2-41.3.2 Reviews and Approvals of Contract Awards, Modifications, and Ordering Agreements*, USPS, https://about.usps.com/manuals/spp/html/spp2_308.htm (last modified April 1, 2023).

The USPS, in accordance with both the January 4th Order and its procedures, issued a new agency action when it finalized the Award Affirmation Decision. The USPS conducted a limited reevaluation of Samsara's technical proposal. AR 4714, 4721-71. Each TET member reviewed Samsara's proposal "afresh" by reevaluating Samsara's proposed OBDI solution against the solicitation requirements. AR 4714. The Technical Evaluation Chairperson then presented the TET's findings in a written report. AR 4781. The CO then conducted a revised best value trade-off determination based on that report, AR 4791-92, and "[i]n light of the superior technical features of the Geotab solution, competitive pricing, and lowest overall risk," the CO determined that Geotab offers the best value to the USPS and reaffirmed his award recommendation, AR 4792. The Vice President of Supply Management then reviewed and approved the recommendation. AR 4793. Thus, in following the procedures outlined in the solicitation and SP&Ps, the USPS issued a new agency action. *See Biden*, 597 U.S. at 811.

Samsara's argument, in reliance on *Biden*, that termination of the contract is required for there to be new agency action is unavailing, [ECF 56] at 19-20, because all that is required for new agency action is that there is a superseding action that complies with the applicable procedures. In *Biden*, the Department of Homeland Security ("DHS") issued a memorandum in June rescinding the Migrant Protection Protocols ("MPP") program ("June Memorandum"). 597 U.S. at 793. After the States of Texas and Missouri filed a lawsuit against the DHS's action, the district court vacated the June Memorandum. *Id.* at 793-94. It also imposed a nationwide injunction ordering the government to enforce and implement the MPP. *Id.* The government appealed the district court's order to the United States Court of Appeals for the Fifth Circuit, and it sought a stay of the injunction, which the district court and the Fifth Circuit denied. *Id.* at 794-95. During the litigation proceedings, the DHS Secretary released a new memorandum in October to terminate the MPP program "along with a 39-page addendum explaining his reasons for doing so," (the "October Memoranda"). *Id.* at 795. The government moved to vacate the injunction on the ground that the October Memoranda superseded the June Memorandum, but the Fifth Circuit denied the motion. *Id.* at 796. The Fifth Circuit also affirmed the district court's judgment in full, holding that the October Memoranda "did not constitute a new and separately

reviewable 'final agency action.'" *Id.* (citation omitted). It characterized the October Memoranda as "simply explain[ing] [the] DHS's decision." *Id.* at 797 (emphasis removed).

On review of the Fifth Circuit's decision, the Supreme Court held that the October Memoranda constituted new agency action under the second *Regents* path. *Biden*, 597 U.S. at 811. The Supreme Court explained that "[t]he prohibition on *post hoc* rationalization applies only when the agency proceeds by the first option from *Regents*." *Id.* at 810. Under the first option, "the bar on *post hoc* rationalization operates to ensure that the agency's supplemental explanation is anchored to 'the grounds that the agency invoked when it took the action.'" *Id.* at 810-11 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). However, the Supreme Court stated that the DHS Secretary "chose the second option from *Regents*, and 'deal[t] with the problem afresh' by taking *new* agency action." *Id.* at 811 (cleaned up) (quoting *Regents*, 591 U.S. at 21). The Supreme Court explained that the "second option can be more procedurally onerous than the first—the agency 'must comply' with the procedural requirements for new agency action'—but the benefit is that the agency is 'not limited to its prior reasons' in justifying its decision." *Id.* (quoting *Regents*, 591 U.S. at 21). Applying the *Regents* framework to the October Memoranda, the Supreme Court held that the Secretary "returned to the drawing table and [took] new action, therefore, the Secretary was not subject to the charge of *post hoc* rationalization." *Id.*

Applying *Biden* to the instant facts, termination of the contract by the USPS was not required for it to undertake new agency action. Under *Biden*, a new agency action is an action that supersedes a prior action. 597 U.S. at 811 (stating that "the Secretary [] chose the second option from *Regents*" by dealing with the matter afresh "by taking new agency action."); *accord Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288-89 (10th Cir. 2024) (interpreting *Biden* to require a superseding action); *see also Cahaba*, 165 Fed. Cl. at 328 (finding that agency's action was a new agency action because it was "a new decision and supersedes the [a]gency's original decision."). Here, the Court enjoined the USPS from proceeding in performing the contract pending corrective action in the form of a reevaluation of Samsara's technical proposal and a new best value determination. *Samsara I*, 169 Fed. Cl. at 332. The USPS immediately stopped performance of the contract, [ECF 59] at 47, and it undertook corrective action by reconvening the TET, AR 4714, making a new best value determination, AR 4792, and reaffirming the contract award to Geotab. AR 4792-93. The fact that the USPS did not terminate the contract, as an extra procedural step, does not take away from the fact that the USPS superseded its prior contract award decision by conducting a new best value determination and finalizing the Award Affirmation Decision.[8] The USPS "returned to the drawing table and [took] new action." *Biden*, 597 U.S. at 811.

---

[8] Geotab argues that Samsara has conceded that the Award Affirmation Decision was a new agency action by acknowledging throughout the litigation that it is final agency action. [ECF 58] at 14. Further, Geotab asserts that "[t]he affirmation itself constitutes new agency action that replaces the original award" because it satisfies "the two conditions that the Supreme Court set forth in *Bennett*." [ECF 58] at 13. While the Supreme Court in *Biden* did cite *Bennett v. Spear*, 520 U.S. 154 (1997), for the proposition that the memorandum in *Biden* is a final agency action, the Supreme Court did not rely on *Bennett* for its analysis on whether the memorandum was a new agency action. *See Biden*, 597 U.S. at 811 (stating that because the Secretary "returned to the drawing table and [took] new action," the memorandum constituted new agency action and not *post hoc* rationalization.). The analysis between a final agency action—typically applied to determine whether an agency action is ripe for review, *see Bennett*, 520 U.S. at 177-78—and a new agency action appears to be separate in *Biden*. *See Biden*, 597 U.S. at 809-811. The Supreme

Samsara also argues that the agencies in *Syneren* and *Cahaba* set forth a precedent for new agency action "by terminating their prior contract awards, reconducting their evaluations, and issuing new award decisions to support new contracts." [ECF 56] at 21. Nonetheless, the facts in *Syneren* and *Cahaba* do not necessarily require that, for an agency to take the "full benefit[] of new action, *id.*, the agency must terminate its contract. Although the agencies in *Syneren* and *Cahaba* had terminated the contracts prior to issuing a new agency decision, *see Syneren*, 168 Fed. Cl. at 770; *Cahaba*, 165 Fed. Cl. at 325, termination of a contract is not necessary for new agency action. *Syneren* emphasized that the agency terminated each of the awarded contracts prior to reevaluating the protestor's proposals, 168 Fed. Cl. at 770, but the court's conclusion that the agency's decision resulted from new agency action also hinged on the agency's adherence to the procedures for re-evaluation, *id.* at 770-71. Outside the bid protest context, the fact that an agency "reexamined the administrative record and dealt with appellant's appeal 'afresh'" is sufficient to determine that an agency issued a new agency action rather than provide *post hoc* rationalizations. *Fisher*, 994 F.3d at 670 (quoting *Regents*, 591 U.S. at 21). This is true, even if the new agency action purports itself to "provid[e] a revised and more complete explanation." *Id.* Instead, courts look to the substance of the action to determine whether it was new agency action. *Id.*

This also applies to the bid protest context. For example, in *Connected Global*, the court held that the agency issued a new agency action when it undertook a thorough reevaluation. *See* 162 Fed. Cl. at 734 (stating that the agency's corrective action constituted new agency action because its "reevaluation of the proposals entirely is tantamount to examining the issue afresh."). While termination may be helpful in determining whether an agency is superseding a prior decision, the court still must examine whether the agency followed its stated procedures to determine the nature of the action. *See Biden*, 597 U.S. at 811 (stating that new agency action "can be more procedurally onerous . . . the agency 'must comply with the procedural requirements for new agency action'—but the benefit is that the agency is 'not limited to its prior reasons' in justifying its decision.") (quoting *Regents*, 591 U.S. at 21); *Fisher*, 994 F.3d at 670 (stating that "[a]lthough [the agency's] 2016 decision claimed to modif[y] the 2011 decision by more fully responding and providing a revised and more complete explanation, its substance made clear that it was a new agency action.") (third alteration in original) (cleaned up). Here, the USPS's reevaluation, new best value determination, and finalization of the Award Affirmation Decision makes clear that the USPS undertook new agency action when "it reexamined the administrative record and dealt with [Samsara's proposal] 'afresh.'" *Id.* (citing *Regents*, 591 U.S. at 21).

Although Samsara contends that the USPS merely "revis[ed] its prior evaluation materials in order to justify its November 2022 contract award," [ECF 56] at 21, the USPS's reliance on the undisturbed portions of the prior evaluation does not foreclose new agency

---

Court only relied on *Bennett* to correct the Fifth Circuit's understanding that it was "reviewing an abstract decision apart from specific agency action;" *id.* at 809, whereas it examined the memorandum as a new agency action because the Secretary "accepted the District Court's vacatur and dealt with the problem afresh" and that the "Memoranda made that clear 'by its own terms,'" *id.* at 808. Here, the USPS's Award Affirmation Decision is both a final agency action for the reasons stated in *Samsara*, 170 Fed. Cl. at 238-39, and a new agency action for the reasons stated herein.

action. In a similar argument in *Syneren*, the court found that an agency's reevaluation of proposals was consistent with an earlier order issued in a separate, related bid protest. 168 Fed. Cl. at 777. There, the court issued an order for the agency to reconduct its technical evaluation, and in response, the agency reevaluated issues identified in the prior bid protest. *Id.* The protestor argued that the agency's decision to reevaluate the proposal based on the arguments raised by the government in the earlier bid protest was arbitrary and capricious. *Id.* The court rejected that argument, stating that the agency "re-evaluated [the protestor's] proposal after *Allicent* and made substantive changes . . . [A]ll *Allicent* required was that a technical re-evaluation, if [the agency] chose to undertake one, be conducted 'in a manner not inconsistent with' that opinion." *Id.*

Here, the USPS reevaluated Samsara's proposal in a manner consistent with *Samsara I*. In undertaking its reevaluation, the TET identified all issues related to Samsara's OBDI solution, revising its determination of the strengths, weaknesses, and risks assessed to Samsara's technical proposal. *See* AR 4737-38 (revising strength to include that Samsara's solution "describes [Commercial Off the Shelf] device that is similar to what would be needed for OBDI"); AR 4738-39 (revising weakness to identify that Samsara's solution lacks "specific [Research and Development ('R&D')] plans or past examples."); AR 4740 (revising risk to state that "[t]here is a risk of Samsara not actually having OBDI ready for FAT as they have not provided an R&D plan nor examples of related past experience in developing a similar cable or work with OBDI."). This reevaluation resulted in a revised technical score—albeit the same numerical value as the prior evaluation—for Samsara, AR 4779, and the USPS applied that score to the best value determination, resulting in the Award Affirmation Decision, AR 4791-92. Adhering to those portions of the evaluation that were undisturbed by *Samsara I* does not change the nature of the USPS's actions. *Biden*, 597 U.S. at 813 (stating that "an agency that takes superseding action on remand is entitled to 'reexamine[ ] the problem, recast its rationale and reach[ ] the same result'"); *Fisher*, 994 F.3d at 670 (holding that the agency's reliance on the prior administrative record did not foreclose a finding of new agency action); *Syneren*, 168 Fed. Cl. at 770-71. In following its procedures, the USPS superseded its prior November 2022 contract award decision and issued a new agency action. *Biden*, 597 U.S. at 811.

## B.    Samsara's Assertion that the USPS's New Agency Action Fails to Satisfy the Rational Basis Test

Samsara argues that, if the USPS did take new agency action, "that new action cannot survive APA review," [ECF 56] at 22, because the scope and form of the corrective action lacked a rational basis, *id.* at 25-26. Samsara contends that the USPS arbitrarily read restrictions into the January 4th Order by limiting "its corrective action to review of Samsara's original proposal against the original Solicitation." *Id.* at 26. Samsara also asserts that the USPS's corrective action is arbitrary because "the USPS's chosen approach to corrective action [] 'entirely failed to consider an important aspect of the problem.'" *Id.* at 27 (quoting *Motor Vehicle Assoc. of U.S., Inc. v. State Farm Mut. Auto Ins., Co.*, 463 U.S. 29, 43 (1983)). The government argues that the USPS's "chosen corrective action is reasonable" and that "[a]gencies possess the discretion to determine the scope of corrective action, which will be sustained so long as it is reasonable." [ECF 59] at 22 (citing *Dell Fed.*, 906 F.3d at 991-93). Geotab contends that the USPS "is not required to justify every non-required, non-action," [ECF 58] at 25, and that the USPS "did not fail to consider an important part of the problem," *id.* at 26.

When an agency undergoes corrective action, the Court reviews that action under the APA's rational basis standard. *Dell Fed.*, 906 F.3d at 992. "The rational basis test asks 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Id.* (quoting *Banknote*, 365 F.3d at 1351). "To determine whether the scope of a corrective action was reasonable under the circumstances and appropriate to remedy the impropriety, the court must conduct a fact-specific review." *PAE Applied Techs., LLC v. United States*, 154 Fed. Cl. 490, 512 (2021) (citing *Pro. Serv. Indus., Inc. v. United States*, 129 Fed. Cl. 190, 203 (2016)). Guiding this review, "[c]ourts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting *State Farm*, 463 U.S. at 43). "[T]he court affords the [agency's] decision to take corrective action deference and will uphold the decision if it is rational, reasonable, and coherent and reflects due consideration of all relevant factors." *Sys. Application & Techs., Inc. v. United States*, 100 Fed. Cl. 687, 716 (2011), *aff'd* 691 F.3d 1374 (Fed. Cir. 2012); *accord PAE.*, 129 Fed. Cl. at 512. Thus, the court "cannot set aside an agency's corrective action decision when the agency had a rational basis for that determination." *ANHAM FZCO v. United States*, 149 Fed. Cl. 427, 435 (2020) (internal quotation marks and citation omitted).

The USPS's corrective action had a rational basis. In the Award Affirmation Decision, the CO stated that "the purpose of this reevaluation recommendation memorandum is to conduct the limited reevaluation ordered by the court of Samsara's technical proposal, make a revised best value trade-off determination, and, if necessary, issue a new award decision based on these findings." AR 4784. The CO acknowledged that "the court found that the Postal Service erroneously identified one specific weakness related to OBDI in Samsara's technical proposal" and ordered a re-evaluation of Samsara's proposal to remedy this error. *Id.* The CO also noted that the Court otherwise found that the USPS "properly evaluated Geotab's and Samsara's technical proposal[s]" and that the Court rejected Samsara's arguments that the USPS did not properly evaluate price. *Id.* On this basis, the CO directed the Technical Evaluation Chairperson to reconstitute and reconvene "the technical evaluation team to conduct consensus discussions for the purposes of updating the technical evaluation team's evaluation of Samsara's technical proposal to redress the error identified by the Court with respect to the OBDI requirements." *Id.* The USPS did not request new proposals for the reevaluation because, as the CO explained, "any new award decision, if necessary, is premised upon the original RFP and proposals." *Id.* Instead, based on the January 4th Order, the CO stated that "the sole and limited scope of the technical reevaluation effort was to consider Samsara's proposed approach to addressing the Postal Service's OBDI requirements without any unstated evaluation criteria, and accordingly adjust Samsara's technical scoring if appropriate." AR 4785.

The USPS articulated a "satisfactory explanation for its [corrective] action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). The Court's January 4th Order only required that the USPS reevaluate Samsara's proposal to correct the

identified OBDI error and to conduct a new best-value determination. *Samsara I*, 169 Fed. Cl. at 332. The USPS followed the letter of this order and explained its approach to executing that order in the Award Affirmation Decision. Although the USPS's Award Affirmation Decision resulted in the same outcome as the prior evaluation, "[i]t is black-letter law that an agency that takes superseding action on remand is entitled to 'reexamine[] the problem, recast its rationale and reach[] the same result.'" *Biden*, 597 U.S. at 813 (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *Syneren*, 168 Fed. Cl. at 773. Therefore, the USPS's corrective action was rational. *See Dell Fed.*, 906 F.3d at 998 (stating that "[t]he Army was not legally required to address every option, but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so.") (citing *Chapman*, 490 F.3d at 938).

Samsara argues that "the USPS has not articulated any rational basis for restricting its corrective action to review of Samsara's original proposal against the original Solicitation. [ECF 56] at 26. Yet, while the USPS did not "amend[] the Solicitation or invit[e] revised proposal content," *id.*, the USPS was not required to do so to remedy the error identified by the Court, and its corrective action had a rational basis. The USPS conducted a narrowly tailored reevaluation of Samsara's technical proposal that specifically targeted the area of its prior evaluation that the Court found to be flawed. The USPS stated that "[t]he court otherwise found that [the] Postal Service properly evaluated Geotab's and Samsara's technical proposal in accordance with the RFP." AR 4784. Further, the USPS explained that no new proposals were required to reevaluate Samsara's existing proposal because "any new award decision, if necessary, is premised upon the original RFP and proposals." *Id.* Thus, the USPS provided a reasonable explanation for its corrective action. *See PAE*, 154 Fed. Cl. at 518 (stating that "the Navy was permitted to take limited corrective action, even one specifically aimed at cost, so long as the Navy had a rational basis for taking the corrective action."); *see also Syneren*, 168 Fed. Cl. at 770-71, 776 (finding the agency's "re-evaluation of proposals [] permissible[] and the decision rational" where the agency conducted new technical evaluations but relied on the prior past performance and price evaluation reports). Even though the USPS could have obtained revised technical proposals or amended the solicitation, the USPS "was not legally required to address every option, but rather to provide a reasonable corrective action and adequately explain its reasoning for doing so." *Dell Fed.*, 906 F.3d at 998 (citing *Chapman*, 490 F.3d at 938); *accord PAE*, 154 Fed. Cl. at 522.

Samsara identifies three aspects that it argues the USPS failed to consider in undertaking its corrective action. [ECF 56] at 27; Oral Argument at 9:09-9:29, *Samsara Inc. v. United States*, No. 24-63 (Fed. Cl. June 6, 2024) [hereinafter Oral Argument]. Samsara argues that the USPS's failed to consider that the original proposals expired, that most of the work contemplated in the solicitation had already been performed, and that any result other than re-affirmation of the award to Geotab will require the USPS to remove the installed Geotab devices. [ECF 56] at 27. By failing to consider these changed circumstances, Samsara argues that the USPS "irrationally proceeded under the illusion that time had stopped and nothing had changed between November 2022 and January 2024." *Id.* at 27-28.

First, Samsara argues that "[i]t is irrational for the USPS to design and undertake corrective action that requires a new best value tradeoff among expired proposals, without even

acknowledging that the proposals are expired." [ECF 56] at 28.[9] However, in the Award Affirmation Decision, the USPS considered and decided that no new proposals were required for the purposes of its corrective action. AR 4784 (stating that "[n]o new proposals were required to reevaluate Samsara's existing proposal against other existing proposals, make a new best value trade-off decision, and make a new award decision as necessary"); AR 4791 (stating that the USPS did not reevaluate the price proposals because the Court upheld the USPS's price evaluations). Even though the price proposals were expired at the time of the corrective action, the USPS afforded Samsara a fair price evaluation based on Samsara's proposal at the time of the original award decision, and the Court upheld that price evaluation in *Samsara I. See Samsara I*, 169 Fed. Cl. at 329-30. Thus, it was not necessary for the USPS to revisit the price proposals and reconduct a new price evaluation as part of its corrective action to remedy the unstated criteria. *See State Farm*, 463 U.S. at 43 (stating that "[i]n reviewing that explanation, we must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'") (quoting *Bowman*, 419 U.S. at 285). The USPS's decision to not seek new proposals as part of its corrective action and, instead, to rely on the undisturbed portions of its prior evaluation had a rational basis. *See Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 172 (2009) (stating that "[a]n agency is required to proffer an explanation for its action but that explanation need not be extensive.") (citing *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)).

Samsara next argues that it was "irrational for the USPS to proceed through corrective action without considering whether the 2022 Solicitation and proposals still reflect valid USPS requirements" and that the USPS's failure to amend the solicitation violated its SP&Ps. [ECF 56] at 29. Yet, the stated purpose of the USPS's corrective action was "to consider Samsara's proposed approach to addressing the Postal Service's OBDI requirements without application of any unstated evaluation criteria." AR 4785. While the record does not show that the USPS broadly reconsidered its requirements as part of the corrective action, such reconsideration was not necessary to remedy the unstated evaluation criteria. The changes that Samara alleges to have impacted the USPS's requirements are unrelated to the OBDI requirement.[10] By its allegations, Samsara seeks to unnecessarily broaden the scope of the required corrective action and compel the USPS to conduct a new procurement. However, where the agency provides a rational basis for its corrective action, the Court will not set it aside. *See PAE*, 154 Fed. Cl. at 518. The USPS rationally decided to conduct a limited reevaluation based on the original solicitation and proposals, and it was not required to revisit the requirements as part of its corrective action. It is within the USPS's discretion to determine its requirements. *See Second St. Holdings LLC v. United States*, 162 Fed. Cl. 306, 327 (2022) (stating that "the determination of an agency's needs 'is a matter within the broad discretion of agency officials . . . and is not for [the] court to second guess.'") (alteration in original) (quoting *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010)). Furthermore, Samsara's attempts to show that the requirements

[9] The solicitation required that each price proposal "contain a statement to the effect that the proposal is valid for a period of at least 120 days from the date of receipt thereof by USPS." AR 1867. The offerors submitted price proposals in August 2022, and it is undisputed that the price proposals had all expired prior to the January 4th Order. During the oral argument, Samsara clarified that "expired proposals" referred to the expired price proposals. *See* Oral Argument at 27:50-28:01 ("There were no live prices before the agency.").

[10] Samsara contends that the USPS's requirements have changed since the November 2022 contract award decision because Geotab has continued to install telematic devices, the USPS has selected a Fleet Management Information System, and the USPS has incorporated electric vehicles into the USPS fleet. [ECF 56] at 29.

have changed are unavailing. *See id.* (stating that "the Court [is not] persuaded that the mere passage of time alone or intervening market changes during the procurement are sufficient to presume a change of requirements in this case, or that such circumstances triggered an obligation by [the agency] to re-evaluate the [] requirements.").

The USPS was also not required by the SP&Ps to amend the solicitation. Samsara argues that SP&P 2-24 and SP&P 2-29 require that the USPS amend the solicitation when the requirements change. [ECF 56] at 29-30. However, these SP&Ps do not apply. SP&P 2-24 sets forth procedures for reviewing and finalizing a solicitation. It states that the solicitation "must be amended when changes to the quantity, specifications, delivery schedule, date of receipt of proposal, or clarifications or corrections to solicitation ambiguities or defects must be made." *2-24 Review and Finalize Request for Proposals (RFP)*, USPS, https://about.usps.com/manuals/spp/html/spp2_186.htm#ep975225 (last modified April 1, 2023). As explained above, the USPS's corrective action was limited to reevaluating Samsara's technical proposal—specifically with respect to its OBDI capability—based on the original solicitation. Such corrective action did not necessitate changes to solicitation as contemplated by SP&P 2-24. SP&P 2-29 states that "[o]nce the RFP has been issued, changes to it are reflected in amendments to the RFP." *2-29 Issue Amendments*, USPS, https://about.usps.com/manuals/spp/html/spp2_225.htm#ep883077 (last modified April 1, 2023). It further provides which suppliers should be notified of an amendment. *Id.* Because the corrective action did not require an amendment to the solicitation, SP&P 2-29 also does not apply.

Finally, Samsara states that, "[o]nce this Court issued its January 4[th] Opinion, the USPS necessarily understood that any corrective action outcome other than re-affirmation of the November 2022 award to Geotab will require the USPS to remove more than 117,000 already-installed Geotab devices." [ECF 56] at 31. It argues that "[t]he USPS cannot rationally (or fairly) reevaluate proposals and make an objective best value decision in January 2024 without acknowledging and addressing the inescapable fact that any outcome other than re-award to Geotab will require the additional time and expense of removing and replacing the devices that Geotab already installed." *Id.* at 31-32. Although Samsara couches its argument under the rational basis test, *see* [ECF 56] at 32 (stating that "[a] rational corrective action undertaken in January 2024 had to recognize and address the issue of already-installed Geotab devices."), in essence, Samsara argues that the USPS cannot grant it a fair opportunity to compete through limited corrective action, *see* [ECF 60] at 32 (stating that "[t]he USPS's approach to corrective action in January 2024 confirms that . . . the USPS is neither willing nor able to craft a corrective action that restores Samsara's fair opportunity to compete"); *id.* (stating that "Samsara cannot have a fair opportunity to compete against Geotab during corrective action if Geotab is able to benefit (expressly or implicitly) from the idea that award to Geotab permits the USPS to avoid the time and expense of device removal").

However, in *Biden*, the Supreme Court stated that [i]t is black-letter law that an agency that takes superseding action on remand is entitled to 'reexamine[] the problem, recast its rationale, and reach[] the same result.'" 597 U.S. at 813 (quoting *Chenery*, 332 U.S. at 196); *see also Syneren*, 168 Fed. Cl. at 773 ("[I]t is not enough to complain that the reconsideration came to the same conclusion as the prior agency action. In other words, plaintiffs cannot establish

'closedmindedness based on an identity between proposed and final agency action.'") (quoting *Biden*, 597 U.S. at 813). Here, despite the USPS not addressing the already-installed Geotab devices, the USPS was not required to do so. Again, the USPS limited its corrective action to address the problem that the Court identified in its January 4th Order. AR 4784. The USPS rationally explained that decision, and the fact that it arrived at the same conclusion—even though that same conclusion would leave the already-installed Geotab devices in the USPS vehicles—has no bearing on whether the USPS acted arbitrarily and capriciously by omitting an explanation about those devices. Samsara's charge amounts to an allegation of closemindedness, which is insufficient to invalidate the USPS's Award Affirmation Decision. *See Biden*, 597 U.S. at 813. The USPS is entitled to reach the same result upon conducting a procedurally proper reevaluation.[11] *Syneren*, 168 Fed. Cl. at 773 (citation omitted).

## IV.    CONCLUSION

For the foregoing reasons, Samsara's motion for judgment on the administrative record [ECF 56] is **DENIED**, and the government's and Geotab's respective cross-motions [ECFs 58, 59] are **GRANTED**.

Samsara requests that the Court "issue declaratory relief" that "the USPS's actions challenged here are unlawful and irrational," [ECF 56] at 34, that the Court "permanently enjoin the USPS from further performance of the November 2022 contract," *id.*, that the Court "set aside and vacate the Award Affirmation [Decision] and the November 2022 contract award before sending this matter back to the USPS," *id.*, and that "the injunction and remand order should come with instructions to take new action," *id.* at 35. When deciding if a permanent injunction is warranted, the court considers whether: "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). Achieving success on the merits "is a necessary element for a permanent injunction." *Dell Fed.*, 906 F.3d at 999. In this case, Samsara has not succeeded on the merits. Therefore, Samsara is not entitled to a permanent injunction.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order entered on January 22, 2024. [ECF 11]. Accordingly, the Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE**, **on or before July 19, 2024**, a joint status report that identifies any information the parties contend should be redacted, explains the basis for each proposed redaction, and includes an attachment of the proposed redactions for this Opinion. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

---

[11] To prevail in a bid protest, the protester must show not only a significant error in the procurement process, but also that the error prejudiced the bidder. *See Bannum*, 404 F.3d at 1351. Because Samsara has not succeeded in showing that the USPS erred in its corrective action, the Court does not reach Samsara's arguments with respect to prejudice.

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge